## FT. EDWARD FOOD PRODUCTS CORPORATION v. McCAMPBELL.

District Court, N. D. New York. January 29, 1928.

1. **Intoxicating liquors** &lreverse;108(10)—**Director of prohibition held not necessary party to review of prohibition administrator's revocation of permit to operate dealcoholizing plant (National Prohibition Act, tit. 2, §§ 5, 9 [27 USCA §§ 14, 21]; Act March 3, 1927, § 6 [5 USCA § 281e]).**

In action to review order of prohibition administrator revoking permit to operate dealcoholizing plant under National Prohibition Act, tit. 2, §§ 5, 9 (27 USCA §§ 14, 21), Act March 3, 1927, § 6 (5 USCA § 281e), prohibition director *held* not necessary party.

2. **Intoxicating liquors** &lreverse;108(10)—**Court's authority to review order of prohibition administrator held limited to correcting errors at law, and determining whether decision was supported by evidence (National Prohibition Act, tit. 2, §§ 5, 9 [27 USCA §§ 14, 21]; Act March 3, 1927, § 6 [5 USCA § 281e]).**

Action in equity to review prohibition administrator's revocation of permit to operate dealcoholizing plant under National Prohibition Act, tit. 2, §§ 5, 9 (27 USCA §§ 14, 21), and Act March 3, 1927, § 6 (5 USCA § 281e), gave court authority merely to correct errors at law and determine whether administrator's decision was supported by evidence or clearly arbitrary or capricious, and proceedings did not involve trial de novo.

3. **Intoxicating liquors** &lreverse;108(5)—**Findings that company operating dealcoholizing plant unlawfully manufactured and removed intoxicating liquor, and failed to keep premises open for inspection, held not sustained (National Prohibition Act, tit. 2, §§ 5, 9 [27 USCA §§ 14, 21]; Act March 3, 1927, § 6 [5 USCA § 281e]).**

In action in equity to review order of prohibition administrator revoking permit to operate dealcoholizing plant under National Prohibition Act, tit. 2, §§ 5, 9 (27 USCA § 14, 21), and Act March 3, 1927, § 6 (5 USCA § 281e), findings that permittee unlawfully manufactured

and removed intoxicating liquor and failed to keep premises open for inspection *held* not supported by evidence.

**4. Intoxicating liquors ⚖108(5)—Findings of company's unlawful possession and removal of intoxicating liquor held sustained, in action to review revocation of permit to operate dealcoholizing plant (National Prohibition Act, tit. 2, §§ 5, 9 [27 USCA §§ 14, 21]; Act March 3, 1927, § 6 [5 USCA § 281e]).**

Prohibition administrator's findings of company's unlawful possession and removal of intoxicating liquor *held* not capricious, arbitrary, or wholly unsupported by evidence, so as to warrant reversal, in action in equity to review administrator's revocation of permit to company to operate dealcoholizing plant under National Prohibition Act, tit. 2, §§ 5, 9 (27 USCA §§ 14, 21), and Act March 3, 1927, § 6 (5 USCA § 281e).

**5. Intoxicating liquors ⚖108(5)—Prohibition administrator, in proceedings for revocation of permit to operate dealcoholizing plant, had discretion to reject explanatory testimony (National Prohibition Act, tit. 2, §§ 5, 9 [27 USCA §§ 14, 21]; Act March 3, 1927, § 6 [5 USCA § 281e]).**

Prohibition administrator, in proceedings for revocation of permit to operate dealcoholizing plant under National Prohibition Act, tit. 2, §§ 5, 9 (27 USCA §§ 14, 21), and Act March 3, 1927, § 6 (5 USCA § 281e), had right, in exercise of judicial discretion, to disregard testimony of witnesses explaining facts and refuting inferences deducible from circumstantial evidence.

In Equity. Proceeding by the Ft. Edward Food Products Corporation against Andrew McCampbell, Acting Prohibition Administrator to review the order of the Prohibition Administrator, revoking a permit to operate a dealcoholizing plant. Judgment for defendant, affirming the order.

Donald P. Gorman, of Syracuse, N. Y. (Roscoe Irwin, of Albany, N. Y., and N. William Bray, of Utica, N. Y., of counsel), for complainant.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (B. Fitch Tompkins, Sp. Asst. U. S. Atty., of Syracuse, N. Y., of counsel), for defendant.

BRYANT, District Judge. This is an action in equity, brought in accordance with sections 5 and 9 of title 2 of the National Prohibition Act (27 USCA §§ 14, 21), and in pursuance of the provisions of section 6, chapter 348, of the Act of Congress of March 3, 1927, 44 Stat. 1383 (5 USCA § 281e), to review the action of the prohibition administrator in revoking the permit theretofore issued to complainant, and to affirm, modify, or reverse the findings of the said administrator, as the facts and law of the case may warrant. [1] Upon the motion for a preliminary injunction, argued in this case, the government raised the point that the director of prohibition should be a party to this action, basing its contention on the fact that the director issues and grants the permits through subordinates, and that, being the principal, he and not the administrator is the proper party defendant. Under the statutes, as they now exist since the recent admendments, this objection does not seem to warrant serious consideration. Mr. McCampbell, as acting prohibition administrator of this district, revoked the permit, and the statutes seem to provide for a review by the court without the necessity of making the director a party.

In this proceeding there are two stenographic records, one made by a stenographer from the prohibition administrator's office, and the other by Welsh & Munger, public stenographers. These records, while at variance in some particulars, are not at variance on any material points, so that a study of either will disclose substantially the same facts. I am not acquainted with the work and accuracy of the stenographer who appeared for the prohibition administrator. Welsh & Munger, in addition to being certified stenographers, are the stenographers for the United States court in this district, and I feel no hesitancy in following their transcript of the proceeding.

[2] Complainants urge that this is a "trial de novo," that the court is not limited as in a bill of review, that it is the first opportunity complainant has to receive a judicial determination, and thus comes into this court unlimited. With this contention I cannot agree. Judge Inch, in Hoell v. Mellon (D. C.) 4 F.(2d) 859, stated that "the review feature must not be overlooked." From the reading of section 5, this position seems well taken. In Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, the Supreme Court said:

"It is clear that Congress, in providing that an adverse decision of the Commissioner might be reviewed in a court of equity, did not undertake to vest in the court the administrative function of determining whether or not the permit should be granted; but that this provision is to be construed, in the light of the well-established rule in analogous cases, as merely giving the court authority to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious."

It therefore seems that my authority in this case is to correct errors at law and de-

termine whether the decision is wholly unsupported by the evidence or clearly arbitrary or capricious. The case was submitted upon the record had before the hearing officer. No complaint is made regarding the admission or rejection of evidence, and no exceptions to rulings have been mentioned for consideration. The position of complainant is that the evidence is not sufficient in weight and character to form a basis for the decision rendered.

The complainant, a New York corporation, for some time prior to April 12, 1927, owned and operating a dealcoholizing plant in connection with its business of manufacturing cereal beverages at Ft. Edward, N. Y. The evidence shows it to be the only cereal beverage manufacturing plant in that vicinity. It had a permit, issued in accordance with the provisions of the National Prohibition Act, and was working thereunder. On or about April 18, 1927, an order was served on complainant, directing it to show cause why its permit should not be revoked and canceled on the ground that it had not in good faith conformed to the terms of the permit; the order specifying eight charges or alleged violations. A hearing was had before an officer designated for that purpose, and his decision recommended that all charges with the exception of one be sustained. Upon this decision the acting prohibition officer made an order revoking the permit, basing the order upon the charges recommended to be sustained.

Concisely, the charges sustained are as follows: The first and second, that between June 15, 1926, and April 12, 1927, at divers times, plaintiff unlawfully manufactured and removed intoxicating liquor, to wit, beer containing a prohibited amount of alcohol; the third, fourth, and fifth, that on April 12th plaintiff unlawfully possessed, delivered for sale, and removed from its brewery 50 half barrels of prohibited beer; the sixth, that on April 12th the entire premises were not open for inspection during reasonable business hours, as required by the regulations and the terms of the permit; the seventh, that plaintiff maintained a common nuisance, in that at divers times between June 15, 1926, and April 12, 1927, it maintained a place where prohibited beer was manufactured, kept, sold, and bartered.

[3] All of the testimony taken before the hearing officer relates to the happenings on April 12, 1927. A careful study of the record fails to reveal any mention of acts, alleged violations, or complaints against plaintiff or its premises under date of June 15, 1926, or at divers times from that date to April 12, 1927. If it be clearly proven that beer was removed from plaintiffs' premises on April 12th, it might be argued that the officials had the right to infer and find that it had been previously manufactured and possessed; but even this conclusion, if rightfully drawn, does not seem to warrant the hearing officer to find, or the prohibition administrator to approve of a finding, that on June 15, 1926, and at divers times between that date and April 12, 1927, plaintiff unlawfully manufactured, possessed, or removed intoxicating liquors. The evidence seems to be wholly lacking to sustain such charges.

It does not seem to me that the evidence supports the finding that the premises were not open for inspection during reasonable business hours. There is no evidence of any inspection or attempted inspection, except on April 12th. It is undisputed that the regular work at the brewery closed at 4 p. m. The prohibition official arrived at about 4:45 p. m. and found the entrances to the racking room fastened. He heard men pounding and talking in there, and forced an entrance. The men, who claimed to be repairmen working after hours, state they did not hear him demanding admission. While the facts surrounding the visit of the official have value as bearing upon the question of whether or not beer was on that day unlawfully removed from the premises, they have not the probative force necessary to sustain the sixth finding made.

[4, 5] The findings of unlawful possession and removal on April 12, 1927, are based wholly upon conclusions drawn from circumstantial evidence. The record does not contain any direct or positive evidence of possession or removal. This is to be regretted, because it seems that the prohibition officials had the opportunity to obtain evidence that would positively have affirmed or negatived the question of misconduct, and thus saved the necessity of basing a decision upon conclusions drawn from their evidence. The facts from which the hearing officer drew his conclusions are: Prohibition agents saw an empty truck enter the brewery yard and noted its number. At the same time they saw a second truck, covered with canvas, come out. They followed this truck about a mile and a half, to a place where it entered a private garage and was being unloaded. Upon examination they found it contained 15 half barrels of beer containing about 3 per cent. alcohol by volume. This truck was seized, and as they were taking it back toward the beverage plant the officials met the truck they

had seen enter the brewery yard empty. This truck had 35 half barrels of beer, which analysis showed contained over 3 per cent. of alcohol by volume.

An occupant of the first car seized testified he got on the car at Brown's garage, and went with the driver and truck to the brewery, where the driver asked for "near beer," and was told he could not get any before morning, and that they turned and went out; the truck having entered in the same condition that it came out. The driver did not testify. The driver of the other truck, the one observed to go into the brewery yard empty, testified that he drove from Troy to obtain a load of 35 half barrels of "near beer"; that he was told by a man at the brewery he could not get any, and he then drove overtown to a garage for gas, and then met a driver of a truck, owned by the same Troy trucking firm, who in substance told him "that his truck was broken and the boss wanted him (the driver of the truck in question) to go and take his load and deliver it"; that he went to the edge of the village, and took 35 half barrels from the broken truck, the load he had when stopped by officials. The owner of the garage testified the driver came to his place for gas, and went away with a man who said he had a broken truck, and that about an hour after one of his men brought the truck in for repairs. A repairman at the brewery testified the two cars came in and asked for "near beer," and he told them "they were out of luck, that they could not get any before morning," and the trucks went away. The last four witnesses were called by the permittee.

The conclusions upon which the decision is based are drawn solely from the facts and circumstances related by the prohibition officials. These facts and circumstances, uncontradicted or unexplained, have sufficient probative force to support the conclusions. The evidence of permittee's witnesses, explaining the facts and refuting the inferences or conclusions, are wholly ignored. These witnesses were before the hearing officer. He heard their oral testimony. He had the opportunity of observing and studying their appearance, manner, and actions. It is apparent that he did not place any credence in their explanations. He had the right to do this, in the exercise of his judicial discretion. And while it is possible that one, taking the testimony "de novo," with the witnesses before him, might reach different conclusions, yet the court, on review, cannot say the official abused his discretion, or that the findings were wholly unsupported by evidence, arbitrary, or capricious.

The first, second, sixth, and seventh findings are reversed, and the third, fourth, and fifth affirmed. Based upon last three mentioned findings only, the order of the prohibition administrator is affirmed. Findings may be drawn accordingly.